FILED
2022 Feb-07  AM 09:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **COOSA RIVERKEEPER, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NEWCASTLE HOMES, INC.,** | ) | **CASE NO.:** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**COMPLAINT**

Plaintiff, Coosa Riverkeeper, Inc. ("Riverkeeper"), by and through its counsel, hereby files this Complaint and alleges as follows:

**I.      Nature of the Case**

1.      For many years, Newcastle Homes, Inc. ("Newcastle") has been polluting Alabama's waterways through its irresponsible development activities. Specifically, in the construction of the Dunnavant Valley Subdivision, Newcastle has illegally discharged sediment into the North Fork of Yellowleaf Creek and Ivy Branch in Shelby County in violation of the Clean Water Act, 33 U.S.C. §§ 1251–1376. The violations raised in this Complaint are the latest in a continuous pattern of violations. The Alabama Department of Environmental Management ("ADEM") has issued several Notices of Violation to Newcastle and has entered into an administrative order with the company, but the violations continue at the construction site.

2.      Newcastle is violating its Clean Water Act National Permit Discharge Elimination System ("NPDES") permit. This Complaint seeks the enforcement as to more than 150 violations of the Clean Water Act ("CWA").

3.      Through counsel, Riverkeeper issued a 60-day notice to Newcastle on June 16, 2021, stating its intention to file a citizen's suit to address numerous violations, pursuant to the CWA, 33 U.S.C. § 1365. The notice stated that Riverkeeper intended to file a complaint in federal court against Newcastle to enforce the requirements of the NPDES permit. A copy of the notice letter is attached as Exhibit 1.

4.      After sixty days had passed, Riverkeeper's counsel also sent numerous written communications to Newcastle's counsel informing Newcastle that the violations were continuing.

5.      Newcastle's counsel always responded that the company was working on the problems at the site and would abate the discharges.

6.      Over a year has passed since the violations began and seven months have passed since Riverkeeper sent the notice letter. The violations identified in the notice letter have not been addressed and will continue in the future, absent a court order for corrective action.

7.      Riverkeeper now seeks declaratory and injunctive relief, the assessment of penalties, and an award of litigation costs and fees to address Newcastle's violations of its NPDES permit and unauthorized discharges.

## II.      Jurisdiction and Venue

8.      This action arises under the Clean Water Act § 505(a), 33 U.S.C. § 1365(a), and this Court has subject matter jurisdiction over the claims set forth in this Complaint under those provisions and under 28 U.S.C. § 1331 (federal question).

9.      Venue is proper in the Northern District of Alabama because the source of the violations alleged herein is located within the Northern District of Alabama (Shelby County). 33 U.S.C. § 1365(c)(1) and 28 U.S.C. § 1391(b) and (c).

### III.   Parties

10.     Plaintiff Riverkeeper is an Alabama nonprofit membership corporation with over 2,700 members that is dedicated to the protection and restoration of the Coosa River and its tributaries. Riverkeeper actively supports effective implementation and enforcement of environmental laws, including the CWA, on behalf and for the benefit of its members. (Overton Declaration, Exhibit 2). Riverkeeper is a "citizen" within the meaning of section 505(g) of the CWA, 33 U.S.C. § 1365(g), with associational standing to bring this case.

11.     Members of Riverkeeper use and value the North Fork of Yellowleaf Creek and Ivy Branch, tributaries of the Coosa River, for recreation, including but not limited to fishing, swimming, wildlife observation, photography, and for aesthetic enjoyment. Shelby County built a 1.8-mile trail, called the Dunnavant Valley Greenway, along a section of the North Fork of Yellowleaf Creek for citizens to enjoy. Newcastle's construction site is across the Creek from this Greenway. Members' enjoyment of this trail and the neighboring Creek is harmed by Newcastle's illegal discharges.

12.     For example, Riverkeeper Member Joe Craddock lives half a mile from Yellowleaf Creek. He fishes in Yellowleaf Creek and frequently visits the Dunnavant Valley Greenway. His ability to fish at Yellowleaf Creek is impaired by Newcastle's illegal discharges of sediment. (Craddock Declaration, Exhibit 3).

13.     Riverkeeper Member Dr. Beau Beard works approximately half a mile from the Newcastle construction site. He runs along the Creek on the Dunnavant Valley Greenway on a weekly basis. His enjoyment of the Greenway is harmed by Newcastle's illegal discharges of sediment. (Beard Declaration, Exhibit 4).

14.     The violations alleged herein harm members' recreational and aesthetic enjoyment of the North Fork of Yellowleaf Creek and Ivy Branch. They would use and enjoy these waters more if the violations alleged herein were abated. Enforcement by this Court of the CWA as to Plaintiff's claims, including injunctive relief and the imposition of fines, would remedy the recreational and aesthetic injuries suffered by Riverkeeper's members. The interests Plaintiff seeks to protect are germane to its purposes and objectives, but neither the claims asserted herein, nor any of the relief requested, require the participation of individual members in this lawsuit. Accordingly, Riverkeeper has associational standing to prosecute this action.

15.     Newcastle Homes, Inc., otherwise known as Newcastle Construction, Newcastle Construction, Inc., Newcastle Development, Newcastle Development, LLC, and Newcastle Development Enterprises, LLC is owned by Glen Siddle. According to the Birmingham Business Journal, Newcastle is the second most active homebuilder in Shelby and Jefferson counties, based on its number of building permits. Newcastle has repeatedly violated its construction stormwater permits for its projects across the state, including at the Dunnavant Valley Subdivision. A search for "Newcastle" in ADEM's efile database for the last five years alone reveals stormwater violations at thirteen of the fifteen Newcastle construction sites inspected by ADEM, and the issuance of at least five warning letters, eight notices of violation ("NOVs"), and two consent orders to the company (totaling $39,200 in penalties).

### IV.     Plaintiff's Compliance with the Pre-Suit Notice Requirements

16.     Section 505(a) of the CWA authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of . . . . an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a). An "effluent standard or

limitation" is defined to include unlawful acts under the terms and conditions of an NPDES permit issued pursuant to Section 402 of the CWA.

17.     The plaintiff must give 60 days notice to the EPA Administrator, to the State, and to the violator of the alleged violation before commencing suit. 33 U.S.C. § 1365(b).

18.     Additionally, the State cannot be "diligently prosecuting" the violation of the specific standard or violation. 33 U.S.C. § 1319(g)(6)(A).

19.     Pursuant to the CWA, 33 U.S.C. § 1365(b)(1)(A), Riverkeeper gave notice of the violations alleged in this Complaint on June 16, 2021. Copies of such notice were also served on the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Regional Administrator of EPA - Region 4, and the Director of ADEM. (Exhibit 1).

20.     At least 60 days have passed since service and receipt of Plaintiff's June 16, 2021 notice letter and neither EPA nor the State of Alabama has commenced or is diligently prosecuting a civil or criminal action against Newcastle in a court of the United States, or a state court, to address the violations of the specific standards, limitations, and orders at issue in this Complaint.

21.     ADEM entered into a Special Order Consent Decree with Newcastle on September 28, 2021 which included a $21,000 penalty; however, this administrative order did not mention or enforce any of the violations that this Complaint seeks to enforce, namely violations of Part I of the permit and discharging without a permit.

22.     Plaintiff is commencing this action within 236 days of the date of service of its notice letter.

### V.     <u>Legal Background</u>

23.     The goal of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

24.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into navigable waters of the United States, unless in compliance with various enumerated sections of the law. Among other things, Section 301(a) prohibits discharges not authorized by the terms of an NPDES permit issued pursuant to Section 402, 33 U.S.C. § 1342 of the statute.

25.     An NPDES permit authorizes the discharge only under certain conditions.

26.     Under authority of the Alabama Water Control Pollution Act of 1975 ("AWCPA") and the authority delegated to the State of Alabama from the EPA, ADEM requires an NPDES permit for discharges associated with construction activity that will result in land disturbance equal to or greater than one acre.

27.     Based on 40 C.F.R. Part 40, on April 16, 2020, ADEM issued NPDES permit ALR10BHC4 to Newcastle, which mandates certain erosion and sediment controls when constructing the Dunnavant Valley Subdivision.

28.     The permit contains terms and limitations regulating how and where Newcastle is authorized to discharge pollution into Yellowleaf Creek.

29.     Newcastle's permit prohibits discharges that cause an increase in the turbidity of the receiving water by more than 50 NTUs [Nephelometric Turbidity Units] above background. ADEM, *NPDES Permit # ALR10BHC4* (March 29, 2016) at 4; Part I.C.10.

30.     Further, Part I.C.9. of the permit prohibits discharges that "will cause or contribute to a substantial visible contrast with the natural appearance of the receiving water." ADEM, *NPDES Permit # ALR10BHC4* (March 29, 2016) at 4.

31.     Citizen suits are permitted when there is a pattern of intermittent violations, even if no violation is occurring at the moment suit is filed. "Intermittent or sporadic violations do not cease

to be ongoing until the date when there is no real likelihood of repetition." *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.,* 844 F.2d 170, 172 (4th Cir. 1988). Riverkeeper alleges that the violations cited in this Complaint are both continuous and intermittent.

32.     The CWA allows a civil penalty of $56,460 for each and every actionable violation that occurred after November 2, 2015 and accessed after December 23, 2020 in accordance with CWA § 505(a), 33 U.S.C. § 1365(a); 33 U.S.C. § 1319(d); Civil Penalty Inflation Adjustment, 87 Fed. Reg. 1676-01 (Jan. 12, 2022) (to be codified 40 C.F.R. Part 19).

33.     Finally, under Section 505(d) of the CWA, 33 U.S.C. § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate."

### VI.     Factual Allegations

34.     According to ADEM, siltation is the third leading cause of impairment to Alabama's waterways. Sediment pollution from newly-cleared construction can degrade water quality, harm fish and other aquatic animals and plants, and increase the difficulty and cost of treating water for drinking and other uses.

35.     Newcastle has clearcut along the steep banks of the North Fork of Yellowleaf Creek in Shelby County to build a 53-acre, 78-lot subdivision called Dunnavant Valley Subdivision or Melrose Landing.

36.     This site is directly adjacent to the North Fork of Yellowleaf Creek which runs along the scenic and popular Shelby County Dunnavant Valley Greenway where hikers, dog-walkers, swimmers, fishermen, and birders recreate.

37.     Ivy Branch flows on the other side of the site, besides some soccer fields, and discharges into the North Fork of Yellowleaf Creek.

38.    The North Fork of Yellowleaf Creek flows into the Coosa River where boaters fish and swim on a daily basis.

**Newcastle's Application for its Permit**

39.    Construction projects involving an acre or more are required to obtain a CWA permit (the Construction General Permit) which requires the implementation of best management practices to limit sediment runoff into surface waters.

40.    Newcastle requested a Construction General Permit on April 16, 2020 by filing the required Notice of Intent.

41.    In this Notice of Intent, Newcastle was required to list its discharge points with latitude and longitude, which it did (33.374133; -86.658889 and 33.371394; -86.657714).

42.    On April 17, 2020, ADEM issued NPDES permit ALR10BHC4 (the Construction General Permit) to Newcastle for the Dunnavant Valley Subdivision. This permit mandates certain erosion and sediment controls and limits discharges into the North Fork of Yellowleaf Creek.

43.    In the cover letter for the permit, ADEM specified that "[c]overage under this permit does not authorize the discharge of any pollutant or wastewater that is not specifically identified in the permit and by the Notice of Intent." Letter from Jeff Kitchens, ADEM, to Shawn Arterburn, Newcastle, Re: Dunnavant Valley Subdivision (April 16, 2020).

44.    The places where Newcastle is currently discharging (Outfalls 1, 2, 2.1, 3, 3.1) do not correspond with the GPS coordinates that Newcastle listed in its Notice of Intent.

45.    In the Notice of Intent, Newcastle lists 33.374133; -86.658889 and 33.371394; -86.657714 as its discharge points. However, its true discharge points are: outfall 1: 33.3732328, -

86.6534041; outfall 2 (and 2.1): 33.3717436; -86.6550295; outfall 3 (and 3.1): 33.3716330, -86.6558533.

46.     The map below compares the discharge points listed in the Notice of Intent (orange points) with Newcastle's true discharge points (purple points).



**Violations Discovered**

47.     Riverkeeper first became aware of the pollution in December of 2020 when Dr. Beau Beard was running along the trail and noticed muddy water pouring into the North Fork of Yellowleaf Creek from the site. He immediately notified the Riverkeeper.

48.     Because of the magnitude of the problem, on December 14, Shelby County submitted a complaint to ADEM noticing "significant discoloration to the water of Yellow Leaf Creek [sic]." ADEM, *Complaint #0Y-006XQ6H34* (Dec. 14, 2020).

49.     Additionally, that same day, Riverkeeper submitted a complaint to ADEM and attached photographs of the streams of muddy water emanating from the site.

**ADEM Finds Violations of Best Management Practices**

50.     On December 23, 2020, ADEM inspected the site and found multiple Best Management Practices that were not followed. "Slopes were not stabilized. Silt fence and rip-rap was not properly maintained. Drainage areas were not stabilized. Culvert collars were not protected. Construction exit pad was not implemented according to the Alabama Handbook. Excessive sediment accumulation was observed at silt fence installations. Excessive sediment accumulation observed in drainage area. Erosion rills observed onsite. Sediment was observed leaving the site and entering an UT to North Fork of Yellowleaf Creek." ADEM, *Inspection Report, Dunnavant Valley Subdivision: 63696-CSW* (Dec. 21, 2020) at 2.

51.     On December 28, 2020, ADEM issued a Notice of Violation finding that "[a]ppropriate, effective Best Management Practices . . . have not been fully implemented and regularly maintained" in violation of "Permit Part III. A" . . . [And] [a]ccumulation of sediment was observed offsite . . ." in violation of Permit "Part III. A. 7." Letter from Anthony Scott Hughes, ADEM, to Shawn Arterburn, Newcastle, Re: Notice of Violation (Dec. 28, 2020) at 2.

52.     Because the violations continued, Riverkeeper filed a 60-day Notice of Intent to Sue on June 16, 2021.

53.     On July 8, 2021, ADEM inspected the site again and issued another Notice of Violation on July 21, 2021 because "[a]ppropriate, effective Best Management Practices (BMPs) for the

control of pollutants in stormwater run-off have not been fully implemented and regularly maintained" in violation of the "Permit, Part III. A." Letter from Anthony Scott Hughes, ADEM, to Shawn Arterburn, Newcastle, Re: Notice of Violation (July 21, 2021) at 1.

54.     On September 28, 2021, ADEM entered into a Special Order Consent Decree with Newcastle because Newcastle was in violations of Parts III. A. and III. D of the Permit. Additionally, Newcastle had not taken "reasonable steps to remove, to the maximum extent practical, pollutants deposited offsite or in any waterbody or stormwater conveyance structure" in violation of Part III. H. 3. of the Permit. ADEM, *In the Matter of Newcastle Homes, Inc. Dunnavant Valley Subdivision*, *Consent Order 21-095-CLD* (Sept. 28, 2021) at 3. Because Newcastle caused "substantial off-site environmental impacts," ADEM imposed a penalty of $21,100 on Newcastle for all of the violations regarding Part III. of the permit listed above. *Id.* at 4, 5.

55.     In this Consent Order, ADEM ordered that Newcastle "fully implement effective BMPs . . . and correct all deficiencies at the Facility" "within thirty days of issuance of this Consent Order." *Id*. at 6.

56.     On November 16, 2021, ADEM inspected the site on a "clear and warm" day "to determine the operator's compliance with Consent Order 21-095-CLD. At the time of the inspection, all BMPs were properly implemented and maintained." ADEM, *Inspection Report, Dunnavant Valley Subdivision: 63696-CSW* (Nov. 16, 2021) at 2.

57.     On December 6, 2021, ADEM wrote to Newcastle and advised that based on the November 16, 2021 inspection, the Operator appears to have met all the conditions of the Consent Order. Letter from Anthony Scott Hughes, ADEM, to Shawn Arterburn, Newcastle, Re: Final Order (Dec. 6, 2021) at 1.

58.    ADEM did not take any instream turbidity samples during any of its inspections nor did it ever cite Newcastle for unpermitted discharges.

59.    In its Consent Decree, ADEM never mentioned Newcastle's turbidity or contrast violations (i.e. violations of Part I. of its permit) nor did it mention Newcastle's unpermitted discharges to the Creek.

**Riverkeeper Documents Turbidity Violations at the Site**

60.    Since December of 2020, Coosa Riverkeeper has monitored the North Fork of Yellowleaf Creek and taken turbidity readings with a Hach 2100Q Portable Turbidimeter 25 times after it rained. The last time it monitored was February 3, 2022.

61.    Every time the organization monitored and sampled, it found that Newcastle contributed "to an increase in the turbidity of the receiving water by more than 50 NTUs above background" in violation of its permit, Part I. C. 10. ADEM, *NPDES Permit # ALR10BHC4* (March 29, 2016) at 4. Large amounts of sediment from the site are washed into the Creek every time it rains.

62.    At times, Newcastle caused the turbidity in the streams to be 15 times what the permit allows.

63.    Additionally, every time the organization monitored and sampled, it found that Newcastle caused "discharge that will cause or contribute to a substantial visible contrast with the natural appearance of the receiving water" in violation of its permit, Part I. C. 9. ADEM, *NPDES Permit # ALR10BHC4* (March 29, 2016) at 4.

**Dec. 14, 2021, Outfall 1**



**Jan. 6, 2022, Ivy Branch Outfall**



**Jan. 6, picture showing "substantial visible contrast" with receiving stream**



64.   The violations have continued. After the notice letter was sent, legal counsel for Riverkeeper contacted Newcastle's counsel and sent photographs with details of the specific, different continuing violations on July 20, July 30, August 12, August 23, August 31, September 17, October 21, November 29, and December 8th.

65.   On November 10, 2021, Riverkeeper visited the site with Newcastle employees to talk about specific remedies. Yet, the violations have persisted into the new year.

<u>**Count I**</u>
**NPDES Turbidity Permit Violations**

66.   Riverkeeper incorporates paragraphs 1 through 65 by reference.

67.   Newcastle's NPDES permit, ALR10BHC4, for the Dunnavant Valley Subdivision states that discharges that "will cause or contribute to an increase in the turbidity of the receiving water by more than 50 NTUs [Nephelometric Turbidity Units] above background" are "not authorized by this permit." ADEM, *NPDES Permit # ALR10BHC4* (March 29, 2016) at 4 (Part I. C. 10).

68.     For the last fourteen months, Riverkeeper has taken turbidity samples at the North Fork

of Yellowleaf Creek below the site as well as samples at the background stream on 25 different

occasions.

69.     Riverkeeper has recorded 59 turbidity violations (highlighted below in yellow) where

Newcastle's discharge was 50 NTUs above the background stream. All values are in NTUs.

| Date | Back-ground Stream | Permit Limit | Outfall #1 | Above Out-fall #1 | Out-fall #2 | Out-fall #2.2 | Front Drain-age | Ivy Branch Pipe | Out-fall #3 | Out-fall #3.1 | Down-stream Bend[1] |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **12/14/20** | 68.5 | 118.5 | Detector signal too low; too turbid[2] | | Detector signal too low; too turbid | | Detector signal too low; too turbid | Detector signal too low; too turbid | | | 621 |
| **2/11/21** | 67.1 | 117.1 | Detector signal too low; too turbid | | 258 | | Detector signal too low; too turbid | Detector signal too low; too turbid | | | 195 |
| **2/15/21** | 146 | 196 | Detector signal too low; too turbid | | Detector signal too low; too turbid | | Detector signal too low; too turbid | Detector signal too low; too turbid | | | 240 |

[1] Riverkeeper took samples downstream, and these samples indicate that Newcastle's discharges impacted downstream water quality.

[2] "Detector signal too low; too turbid" indicates that the light on the turbidity meter could not penetrate the water in the vial because the sample was too turbid. It indicates a violation.

| Date | Background Stream | Permit Limit | Outfall #1 | Above Outfall #1 | Outfall #2 | Outfall #2.2 | Front Drainage | Ivy Branch Pipe | Outfall #3 | Outfall #3.1 | Downstream Bend |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/01/21 | 8.91 | 58.91 | 57.9 | | 68.1 | | sediment collected; not enough water | 9.03 | | | 12.9 |
| 3/16/21 | 18.2 | 68.2 | 857 | | Detector signal too low | | over-range[3] | 84.9 | | | 187 |
| 3/25/21 | 9.92 | 59.92 | 227 | | over-range | | pipe was not draining | 57.8 | | | 72 |
| 5/4/21 | 4.12 | 54.12 | 211 | | 295 | 758 | pipe was not draining | 89.6 | | | 5.79 |
| 5/5/21 | 30.3 | 80.3 | 71.1 | | over-range | | pipe was not draining | 74.1 | | | 51.6 |
| 6/3/21 | 37.2 | 87.2 | 99.5 | | 969 | | n/a[4] | n/a | | | 16.9 |
| 6/7/21 | 6.47 | 56.47 | 41.9 | | 817 | | n/a | n/a | | | 39.7 |
| 6/10/21 | 18 | 68 | 182 | | over-range | | n/a | over-range | | | 20.2 |
| 6/29/21 | 25.4 | 75.4 | over-range | | over-range | | n/a | over-range | | | over-range |
| 7/07/21 | 20 | 70 | 149 | | 56 | | n/a | n/a | | | 44.5 |
| 7/19/21 | 36.7 | 86.7 | 241 | | 62.4 | | n/a | over-range | | | 400 |
| 7/21/21 | 19.2 | 69.2 | over-range | | n/a | | n/a | n/a | | | 16.2 |
| 7/28/21 | 17.7 | 67.7 | 403 | | n/a | | n/a | 3.78 | | | 22.4 |
| 8/11/21 | 7.14 | 57.14 | detector signal too low | | no discharge | | no discharge | over-range | | | 103 |

---

[3] "Overrange" means the light on the turbidity meter could penetrate the water in the vial, but the turbidity was too high for the meter to read the sample. It indicates a violation.

[4] "N/A indicates a place where Riverkeeper did not sample.

| Date | Back-ground Stream | Permit Limit | Outfall #1 | Above Out-fall #1 | Out-fall #2 | Out-fall #2.2 | Front Drain-age | Ivy Branch Pipe | Out-fall #3 | Out-fall #3.1 | Down-stream Bend |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **8/19/ 21** | 12.6 | 62.6 | over-range | | no disch arge | | no discharge | 71.8 | | | 239 |
| **8/31/ 21** | 81.1 | 131.1 | 594 | | no disch arge | | no discharge | 136 | | | 126 |
| **9/16/ 21** | 4.45 | 54.45 | 256 | | 31 | | no discharge | n/a | | | 2.78 |
| **10/21 /21** | 89.8 | 139.8 | over-range | | no disch arge | | no discharge | 417 | over rang e | over rang e | 159 |
| **12/6/ 21** | 150 | 200 | over-range | | water too high to sampl e | | n/a | over-range | site was floo ded | site was floo ded | 173 |
| **12/30 /21** | 50.9 | 100.9 | 170 | | n/a | | n/a | 169 | 653 | n/a | 162 |
| **1/06/ 22** | 48.9 | 98.9 | 663 | 950 | n/a | | n/a | 320 | 408 | n/a | 60.5 |
| **2/3/2 2** | 22.1 | 72.1 | 207 | | n/a | | n/a | n/a | n/a | n/a | n/a |

70.   Based upon Newcastle's egregious history of non-compliance, Riverkeeper believes in good faith that the violations are intermittent and sporadic and will likely continue.

71.   Because these discharges are in violation of the NPDES permit, the above-stated conduct constitutes permit violations which are violations of the CWA 33 U.S.C. § 1311(a).

## Count II
### NPDES Visible Contrast Violations

72.   Riverkeeper incorporates paragraph 1 through 71 by reference.

73.   Newcastle's NPDES Permit No. ALR10BHC4 prohibits discharges where the turbidity of the discharge "will cause or contribute to a substantial visible contrast with the natural

appearance of the receiving water." ADEM, *NPDES Permit # ALR10BHC4* (March 29, 2016) at 4 (Part I. C. 9).

74.     Riverkeeper has taken 59 samples (highlighted in yellow in the above chart) which display a substantial visible contrast with the receiving water.

75.     These violations are intermittent and sporadic and will likely continue when it rains.

76.     Because these discharges are in violation of the permit, the above-stated omissions constitute violations of the CWA 33 U.S.C. § 1311(a).

<u>**Count III**</u>
**Unpermitted Discharges**

77.     Riverkeeper incorporates herein paragraphs 1 through 76 by reference.

78.     Section 301(a) of the CWA prohibits the discharge of pollutants not authorized by the terms of an NPDES permit. 33 U.S.C. § 1311(a).

79.     In its Notice of Intent, Newcastle listed the GPS coordinates where it would be discharging (33.374133; 86.658889 and 33.371394; -86.657714), and ADEM issued a permit based on those listed discharges.

80.     The NPDES permit "does not authorize the discharge of any pollutant or wastewater that is not specifically identified in the permit and by the Notice of Intent." Letter from Jeff Kitchens, ADEM, to Shawn Arterburn, Newcastle, Re: Dunnavant Valley Subdivision (April 16, 2020).

81.     At least 40 times, Newcastle has discharged at several locations without a permit. These outfalls are not identified in the permit or by the Notice of Intent: outfall 1: 33.3732328, -86.6534041; outfall 2 (and 2.1): 33.3717436; -86.6550295; outfall 3 (and 3.1): 33.3716330, -86.6558533.

82.     These violations are intermittent and sporadic and will be ongoing.

## VII.   <u>Demand for Relief</u>

Riverkeeper respectfully requests that this Court grant the following relief:

A.     Render a judgment finding and declaring that Newcastle has violated and is violating its permit and the Clean Water Act through the illegal and unpermitted discharges of pollutants from the site in question into the North Fork of Yellowleaf Creek and Ivy Branch.

B.     Issue an injunction ordering Newcastle to immediately cease all ongoing and continuing CWA violations.

C.     Order that Newcastle remove the pollutants that it has placed in the creeks in a manner that will not harm the creeks.

D.     Order the modification of Newcastle's Notice of Intent to provide updated discharge points in its permit.

E.     Assess a civil penalty of $56,460 for each and every actionable violation of the CWA alleged herein that occurred after November 2, 2015 (158 violations in total) in accordance with 33 U.S.C. § 1365(a), 33 U.S.C. § 1319(d), and Civil Penalty Inflation Adjustment, 87 Fed. Reg. 1676-01 (Jan. 12, 2022) (to be codified 40 C.F.R. Part 19).

F.     Award costs of litigation (including reasonable attorney and expert witness fees) to Riverkeeper in accordance with CWA § 505(d), 33 U.S.C. § 1365(d), and award Riverkeeper such other or different relief to which it may be entitled.

G.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Riverkeeper demands a trial by jury in this action of all issues so triable.

Respectfully submitted this 7th day of February, 2022.

/s/ Sarah M. Stokes
Sarah M. Stokes (ASB-1385-A55S)
Barry Brock (ASB-9137-B61B)
SOUTHERN ENVIRONMENTAL LAW CENTER
2829 2nd Avenue South, Suite 282
Birmingham, AL 35233
Telephone: (205) 745-3060
Facsimile: (205) 745-3064
Email: sstokes@selcal.org
          bbrock@selcal.org

With Copies sent via United States Postal Service to:

Mr. Lance R. LeFleur
Director
Alabama Department of Environmental Management
P.O. Box 301463
Montgomery, AL 36130-1463

Mr. Michael Regan
Administrator
Environmental Protection Agency
Office of the Administrator, 1101A
1200 Pennsylvania Ave., N.

Mr. John Blevins
Acting Regional Administrator
U.S. EPA, Region 4
Sam Nunn Atlanta Federal Center
61 Forsyth Street, S.W.
Atlanta, GA 30303-8960

Hon. Merrick Garland
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue N.W.
Washington, DC 20530-0001